IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| GERALD G. NELSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 19-cv-2839-JPM-tmp |
| | ) |
| DENIS MCDONOUGH, Secretary | ) |
| of the Department of Veterans | ) |
| Affairs, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**REPORT AND RECOMMENDATION**

Before the court by order of reference is a Motion to Enforce the Settlement Agreement, filed by defendant Denis McDonough, Secretary of the Department of Veterans Affairs, on May 13, 2021. (ECF Nos. 23, 27.) Plaintiff Gerald G. Nelson failed to timely respond to Defendant's motion, and as a result, the undersigned entered an Order to Show Cause directing Nelson to respond by June 11, 2021. (ECF No. 28.) To date, Nelson has not filed a response to Defendant's motion. For the reasons below, it is recommended that the motion be granted.

**I.   PROPOSED FINDINGS OF FACT**

The following Proposed Findings of Fact are based on the facts set forth in the Defendant's motion. (ECF No. 1 at 2-3.) Because Nelson did not respond to the motion despite an order by the court

to do so, the facts contained in Defendant's motion are considered undisputed for purposes of this Report and Recommendation and, therefore, an evidentiary hearing is not necessary. See RE/MAX Int'l, Inc. v. Realty One, Inc., 271 F.3d 633, 646 (6th Cir. 2001) (holding that, in considering a motion to enforce a settlement agreement, "no evidentiary hearing is required where an agreement is clear and unambiguous and no issue of fact is present") (citing Aro Corp. v. Allied Witan Co., 531 F.2d 1368, 1372 (6th Cir. 1976)); Duncan v. Union Univ., No. 1:09-cv-01005-JDB-egb, 2010 WL 5632516, at *1 (W.D. Tenn. Feb. 2, 2010), report and recommendation adopted by, 2010 WL 796829 (W.D. Tenn. Mar. 1, 2010) (finding that an evidentiary hearing was not necessary to resolve a motion to enforce a settlement agreement where the non-moving party did not respond to the motion).

On December 4, 2019, Gerald Nelson filed the instant lawsuit alleging employment discrimination on the basis of race and disability and retaliation in violation of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17. (ECF No. 1 at 3.) On March 18, 2021, counsel for Nelson informed Defendant that his client desired to negotiate settlement terms. (ECF No. 23 at 2.) Later that day, Nelson made an initial demand of settlement. (ECF No. 23 at 2.) On March 25, 2021, the parties agreed to settle the case contingent upon the execution of a settlement agreement and, subsequently, Defendant filed a Notice

of Settlement with this court. (ECF Nos. 21; 23 at 2.) Defendant provided Nelson with a proposed settlement agreement for his approval on April 6, 2021. (ECF No. 23 at 2.) Nelson executed the settlement agreement on April 29, 2021. (ECF Nos. 23 at 3; 23-1 at 5.) The executed settlement agreement provides that, in exchange for Nelson agreeing to release his employment discrimination claims against Defendant and to file a joint stipulation of dismissal with prejudice, Defendant agreed to pay Nelson $4,200.00 in compensatory damages. (ECF No. 23-1.)

After Nelson signed the settlement agreement, counsel for Nelson exchanged several emails with Defendant to discuss when and how Nelson would be paid the settlement proceeds. (ECF No. 23-2 at 4.) Defendant signed the settlement agreement on May 4, 2021, and shortly thereafter submitted the agreement for processing with the United States Judgment Fund. (ECF Nos. 23 at 3; 23-1 at 6; 23-2.) In an email later that evening, counsel for Nelson informed Defendant that she could file the Stipulation of Dismissal with Prejudice with this court. (ECF Nos. 23 at 3; 23-2 at 1-2.)

However, on May 6, 2021, counsel for Nelson advised Defendant that his client desired to rescind the settlement agreement. (ECF No. 23 at 3.) After Defendant informed Nelson "the settlement agreement is a binding contract" and that Defendant did not intend to rescind the settlement agreement without cause, counsel for Nelson reaffirmed his client's desire to rescind the agreement on

- 3 -

May 10, 2021. (ECF Nos. 23 at 3; 23-3 at 1-2.) Counsel for Defendant responded by stating in an email later that day, "I will not file the stipulation of dismissal. I will file a motion to enforce the settlement, forthwith." (ECF No. 23-3 at 1.)

The next day, on May 11, 2021, Nelson unilaterally filed a "Termination Agreement," dated May 7, 2021, with the court purporting to nullify the settlement agreement. (ECF No. 23 at 3.) The Termination Agreement is only signed by Nelson. (ECF No. 22 at 3.) Defendant subsequently requested a stop payment on the settlement check, which was due to be deposited into Nelson's bank account later in the day on May 11, 2021. (ECF No. 23 at 3.) Defendant filed the instant motion on May 13, 2021. (ECF No. 23.) Shortly thereafter, counsel for Nelson filed a motion to withdraw. (ECF Nos. 24-25.) In his motion to withdraw, counsel for Nelson stated that "[t]he Plaintiff has advised counsel that his legal services are no longer needed. The Plaintiff has changed his position regarding following counsel's advice. Counsel believes that the Plaintiff's communication that Counsel's services are no longer needed mandate that Counsel file this motion. Additionally, continued representation, especially in seeking client's desire to rescind the settlement agreement herein, may cause Counsel to violate the Rules of Professional Responsibility." (ECF No. 25 at 1.) This court granted counsel for Nelson's motion on May 14, 2021. (ECF Nos. 26.) As a result, Nelson is now proceeding *pro se*.

## II. PROPOSED CONCLUSIONS OF LAW

"'It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them.'" Delgado v. UHS Lakeside, LLC, No. 11-3111, 2013 WL 4648294, at *5 (W.D. Tenn. Aug. 29, 2013) (quoting Bamerilease Capital Corp. v. Nearburg, 958 F.2d 150, 152 (6th Cir. 1992)). Settlement agreements are contracts and thus are governed by state substantive contract law. Nearburg, 958 F.2d at 152. However, before enforcing a settlement agreement, the court "must conclude that the parties have reached an agreement on all material terms." Bobonik v. Medina Gen. Hosp., 126 F. App'x 270, 273 (6th Cir. 2005) (citing Brock v. Scheuner Corp., 841 F.2d 151, 154 (6th Cir. 1988)). To determine whether there was a meeting of the minds, "'courts use an objective standard based on the manifestations of the parties.'" Broadnax v. Quince Nursing & Rehab. Ctr., LLC, No. W2001-00819-COA-R3-CV, 2009 WL 2425959, at *3 (Tenn. Ct. App. Aug. 10, 2009) (quoting T.R. Mills Contractors, Inc. v. WRH Enters., LLC, 93 S.W.3d 861, 866 (Tenn. Ct. App. 2002)). In other words, courts "must determine whether a reasonable onlooker, based upon the parties' outward manifestations," would conclude that the parties agreed to be bound by the terms of the agreement. Moody Realty Co. v. Huestis, 237 S.W.3d 666, 674 (Tenn. Ct. App. 2007). If there is a meeting of the minds, "the settlement is enforceable unless one of the parties shows that the agreement to settle 'is

tainted with invalidity, either by fraud practiced upon [that party] or by a mutual mistake under which both parties acted.'" Delgado, 2013 WL 4648294, at *5 (quoting Callen v. Pa. R. Co., 332 U.S. 625, 630 (1948)).

The undersigned submits that the parties entered into an enforceable settlement agreement. Nelson initiated the settlement discussions, and, over the course of a week, the parties engaged in several rounds of discussions before ultimately reaching an agreement. See Delgado, 2013 WL 4648294, at *6 (finding a meeting of the minds where "[t]he agreement was negotiated in length, with [plaintiff] actively participating and . . . negotiat[ing] . . . very specific changes and inclusions"). Nelson signed the agreement on April 29, 2021 – more than three weeks after Defendant provided him with a proposed draft – and Defendant signed it on May 4, 2021. (ECF No. 23-1.); see Hardy v. Hershey Co., No. 18-2210, 2019 WL 4723812, at *3 (W.D. Tenn. Sept. 26, 2019) ("The parties mutually assented to the terms as evidenced by their signatures. Defendant's signature on a date subsequent to that of Plaintiff does not affect the validity of the Settlement Agreement."). In the final agreement, Defendant agreed to pay Nelson a sum of $4,200.00 in exchange for the release of all of his employment discrimination claims. (ECF No. 23-1.) Following the execution of the settlement agreement, the parties exchanged several emails regarding how, where, and when Defendant was to

deposit the settlement check. (ECF No. 23-2 at 4.) Shortly thereafter, Defendant submitted the settlement agreement to the United States Judgment Fund for processing and payment. (ECF No. 23-2 at 2.) The parties also discussed finalizing a joint stipulation of dismissal with prejudice to be filed with the court and counsel for Nelson even instructed Defendant to "[p]roceed and enter the Stipulation of Dismissal." (ECF No. 23-2 at 1-3.); see RE/MAX Int'l, Inc., 271 F.3d at 646 ("[O]bjective acts of the parties [can] reflect that a[] [settlement] agreement had been reached."). Of note, Nelson was represented by counsel throughout the settlement negotiations and did not become a *pro se* litigant until after this motion was filed. Further, there is no evidence to suggest that the settlement agreement was tainted by any form of fraud or mutual mistake. See Delgado, 2013 WL 4648294, at *5. Moreover, the fact that Nelson unilaterally filed a Termination Agreement with the court is of no consequence. See Remark, LLC v. Adell Broad. Corp., 702 F.3d 280, 283 (6th Cir. 2012) ("[A] prior meeting of the minds is not undone by the decision of one party to back out of the last version, even if it is the most formal version, of a settlement agreement."); Ayers v. Empire Fire and Marine Ins. Co., No. 09-1204 B, 2010 WL 2270425, at *4 (W.D. Tenn. June 4, 2010) (finding that a plaintiff's argument that she "simply changed her mind, hoping to receive more proceeds" was "insufficient to render the [settlement] agreement unenforceable") (citing Girard

v. Mich. Dep't of Corr., No. 96-71343, 1997 WL 1068633, at *4 (E.D. Mich. Oct. 9, 1997), aff'd, 172 F.3d 48 (6th Cir. 1998)). Because the record establishes a meeting of the minds on all material terms, the undersigned submits that the parties entered into a valid and enforceable settlement agreement. See Huestis, 237 S.W.3d at 674.

### III. RECOMMENDATION

For the reasons above, it is recommended that Defendant's Motion to Enforce the Settlement Agreement be granted, that Defendant be ordered to pay Nelson the agreed-upon settlement amount, and that Nelson's lawsuit be dismissed with prejudice in accordance with the settlement agreement.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

June 17, 2021
Date

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**