IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| **GERALD G. NELSON,** | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   No. 19-cv-2839-JPM-tmp |
| | ) |
| **DENIS MCDONOUGH, Secretary** | ) |
| **of the Department of Veterans** | ) |
| **Affairs,** | ) |
| | ) |
|     Defendant. | ) |

_____

**REPORT AND RECOMMENDATION**
_____

    Before the court by order of reference is a Motion to Enforce Settlement Agreement, filed by defendant Denis McDonough, Secretary of the Department of Veterans Affairs, on May 13, 2021. (ECF Nos. 23, 27.) Plaintiff Gerald G. Nelson failed to timely respond to the defendant's motion, and as a result, the undersigned entered an Order to Show Cause directing Nelson to respond by June 11, 2021. (ECF No. 28.) When Nelson did not respond by the deadline, the undersigned entered a Report and Recommendation recommending that the motion be granted on June 16, 2021. (ECF No. 29.) On June 24, 2021, Nelson filed an affidavit in response to the defendant's motion and as an objection to the Report and Recommendation, raising new claims and asking for time to retain a new attorney. The presiding district judge referred the matter

to the undersigned in order to reconsider the motion in light of the affidavit. The undersigned entered an order allowing Nelson thirty days to retain new counsel and setting an evidentiary hearing for August 27, 2021. (ECF No. 33.) Defendant appeared at the evidentiary hearing, but Nelson did not. For the reasons below, it is recommended that the motion be granted.

## I. PROPOSED FINDINGS OF FACT

The following Proposed Findings of Fact are largely based on the facts set forth in the defendant's motion. (ECF No. 1 at 2-3.) As a general matter, "an evidentiary hearing is required where facts material to an agreement are disputed." RE/MAX Int'l, Inc. v. Realty One, Inc., 271 F.3d 633, 646 (6th Cir. 2001). The court held an evidentiary hearing to consider Nelson's factual dispute, but Nelson did not appear. (ECF. No. 34.) Nelson's factual dispute, contained solely in a short affidavit, does not arise from a disagreement about material terms or from wrongdoing by the defendant, but rather amounts to an affirmative defense against enforcement due to duress from his then attorney of record. At no point does Nelson allege wrongdoing by the defendant in the settlement process or disagree with their version of events. Consequently, the facts contained in the defendant's motion are undisputed for purposes of this Report and Recommendation and are supplemented by Nelson's affidavit, where necessary.

On December 4, 2019, Gerald Nelson filed the instant lawsuit alleging employment discrimination on the basis of race and disability and retaliation in violation of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17. (ECF No. 1 at 3.) On March 18, 2021, counsel for Nelson informed defendant that his client desired to negotiate settlement terms. (ECF No. 23 at 2.) Later that day, Nelson made an initial demand of settlement. (ECF No. 23 at 2.) On March 25, 2021, the parties agreed to settle the case contingent upon the execution of a settlement agreement and, subsequently, the defendant filed a Notice of Settlement with this court. (ECF Nos. 21; 23 at 2.) The defendant provided Nelson with a proposed settlement agreement for his approval on April 6, 2021. (ECF No. 23 at 2.) Nelson executed the settlement agreement on April 29, 2021. (ECF Nos. 23 at 3; 23-1 at 5.) The executed settlement agreement provides that, in exchange for Nelson agreeing to release his employment discrimination claims against the defendant and to file a joint stipulation of dismissal with prejudice, the defendant agreed to pay Nelson $4,200.00 in compensatory damages. (ECF No. 23-1.) Nelson does not dispute signing this agreement. (ECF No. 30 at 2.) Instead, he notes that he only signed after his counsel told him he would need to be deposed for the suit to progress.[1] (Id.)

---

[1] Nelson does not claim that defendant was aware of this conversation.

After Nelson signed the settlement agreement, counsel for Nelson exchanged several emails with the defendant to discuss when and how Nelson would be paid the settlement proceeds. (ECF No. 23-2 at 4.) The defendant signed the settlement agreement on May 4, 2021, and shortly thereafter submitted the agreement for processing with the United States Judgment Fund. (ECF Nos. 23 at 3; 23-1 at 6; 23-2.) In an email later that evening, counsel for Nelson informed the defendant that they could file the Stipulation of Dismissal with Prejudice with this court. (ECF Nos. 23 at 3; 23-2 at 1-2.)

However, on May 6, 2021, counsel for Nelson advised the defendant that his client desired to rescind the settlement agreement. (ECF No. 23 at 3.) Nelson believed that his deposition may not be necessary, and "requested the agreement be rescinded." (ECF No. 30 at 2.) After the defendant informed Nelson "the settlement agreement is a binding contract" and that the defendant did not intend to rescind the settlement agreement without cause, counsel for Nelson reaffirmed his client's desire to rescind the agreement on May 10, 2021. (ECF Nos. 23 at 3; 23-3 at 1-2.) Counsel for the defendant responded by stating in an email later that day, "I will not file the stipulation of dismissal. I will file a motion to enforce the settlement, forthwith." (ECF No. 23-3 at 1.)

By this point, Nelson was demanding that his counsel work to set the agreement aside, but was told by counsel that this was not

possible due to obligations on another case in Jackson, Tennessee. (ECF No. 30 at 2.) On May 11, 2021, Nelson unilaterally filed a "Termination Agreement," dated May 7, 2021, with the court purporting to nullify the settlement agreement. (ECF No. 23 at 3.) The Termination Agreement is only signed by Nelson. (ECF No. 22 at 3.) The defendant subsequently requested a stop payment on the settlement check, which was due to be deposited into Nelson's bank account later in the day on May 11, 2021. (ECF No. 23 at 3.) The defendant filed the instant motion on May 13, 2021. (ECF No. 23.) Shortly thereafter, counsel for Nelson filed a motion to withdraw. (ECF Nos. 24-25.) In his motion to withdraw, counsel for Nelson stated that "[t]he Plaintiff has advised counsel that his legal services are no longer needed. The Plaintiff has changed his position regarding following counsel's advice. Counsel believes that the Plaintiff's communication that Counsel's services are no longer needed mandate that Counsel file this motion. Additionally, continued representation, especially in seeking client's desire to rescind the settlement agreement herein, may cause Counsel to violate the Rules of Professional Responsibility." (ECF No. 25 at 1.) This court granted counsel for Nelson's motion on May 14, 2021. (ECF No. 26.) Since then, Nelson has been proceeding *pro se*.

Following this, the undersigned entered an Order to Show Cause for Nelson to directly respond to the Motion to Enforce Settlement Agreement. (ECF No. 28.) Nelson failed to respond, and on June 6,

- 5 -

2021, the undersigned entered a Report and Recommendation recommending that the Motion to Enforce Settlement Agreement be granted. (ECF No. 29.) One week later, Nelson filed an affidavit alleging that his lawyer coerced him into the settlement by telling him that he would be deposed unless he settled the case. (ECF No. 30 at 2.) The affidavit requested that the settlement agreement be set aside "in the hopes that this case can be heard and discrimination and retaliation cease between departments," and explains that he does not "want [his] job, nor livelihood to be threatened each time this case is seemingly settled." (Id.)

The presiding district judge referred the matter back to the undersigned in light of the affidavit. In response, the undersigned granted Nelson thirty days to retain new counsel and set an evidentiary hearing to consider these claims for August 27, 2021. (ECF No. 33.) Nelson did not appear at the evidentiary hearing. (ECF No. 34.)

## II. PROPOSED CONCLUSIONS OF LAW

"'It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them.'" Delgado v. UHS Lakeside, LLC, No. 11-3111, 2013 WL 4648294, at *5 (W.D. Tenn. Aug. 29, 2013) (quoting Bamerilease Capital Corp. v. Nearburg, 958 F.2d 150, 152 (6th Cir. 1992)). Settlement agreements are contracts and thus are governed by state substantive contract law. Nearburg, 958 F.2d at 152.

- 6 -

However, before enforcing a settlement agreement, the court "must conclude that the parties have reached an agreement on all material terms." Bobonik v. Medina Gen. Hosp., 126 F. App'x 270, 273 (6th Cir. 2005) (citing Brock v. Scheuner Corp., 841 F.2d 151, 154 (6th Cir. 1988)). To determine whether there was a meeting of the minds, "'courts use an objective standard based on the manifestations of the parties.'" Broadnax v. Quince Nursing & Rehab. Ctr., LLC, No. W2001-00819-COA-R3-CV, 2009 WL 2425959, at *3 (Tenn. Ct. App. Aug. 10, 2009) (quoting T.R. Mills Contractors, Inc. v. WRH Enters., LLC, 93 S.W.3d 861, 866 (Tenn. Ct. App. 2002)). In other words, courts "must determine whether a reasonable onlooker, based upon the parties' outward manifestations," would conclude that the parties agreed to be bound by the terms of the agreement. Moody Realty Co. v. Huestis, 237 S.W.3d 666, 674 (Tenn. Ct. App. 2007). If there is a meeting of the minds, "the settlement is enforceable unless one of the parties shows that the agreement to settle 'is tainted with invalidity, either by fraud practiced upon [that party] or by a mutual mistake under which both parties acted.'" Delgado, 2013 WL 4648294, at *5 (quoting Callen v. Pa. R. Co., 332 U.S. 625, 630 (1948)).

The undersigned submits that the parties entered into an enforceable settlement agreement. Nelson initiated the settlement discussions, and, over the course of a week, the parties engaged in several rounds of discussions before ultimately reaching an

- 7 -

agreement. See Delgado, 2013 WL 4648294, at *6 (finding a meeting of the minds where "[t]he agreement was negotiated in length, with [plaintiff] actively participating and . . . negotiat[ing] . . . very specific changes and inclusions"). Nelson signed the agreement on April 29, 2021 – more than three weeks after the defendant provided him with a proposed draft – and the defendant signed it on May 4, 2021. (ECF No. 23-1); see Hardy v. Hershey Co., No. 18- 2210, 2019 WL 4723812, at *3 (W.D. Tenn. Sept. 26, 2019) ("The parties mutually assented to the terms as evidenced by their signatures. The defendant's signature on a date subsequent to that of Plaintiff does not affect the validity of the Settlement Agreement."). In the final agreement, the defendant agreed to pay Nelson a sum of $4,200.00 in exchange for the release of all of his employment discrimination claims. (ECF No. 23-1.) Following the execution of the settlement agreement, the parties exchanged several emails regarding how, where, and when the defendant was to deposit the settlement check. (ECF No. 23-2 at 4.) Shortly thereafter, the defendant submitted the settlement agreement to the United States Judgment Fund for processing and payment. (ECF No. 23-2 at 2.) The parties also discussed finalizing a joint stipulation of dismissal with prejudice to be filed with the court and counsel for Nelson even instructed the defendant to "[p]roceed and enter the Stipulation of Dismissal." (ECF No. 23-2 at 1-3); see RE/MAX Int'l, Inc., 271 F.3d at 646 ("[O]bjective acts of the

parties [can] reflect that a [settlement] agreement had been reached."). Of note, Nelson was represented by counsel throughout the settlement negotiations and did not become a *pro se* litigant until after this motion was filed. Further, there is no evidence to suggest that the settlement agreement was tainted by any form of fraud or mutual mistake among the parties to the agreement. See Delgado, 2013 WL 4648294, at *5. At no point did Nelson raise his objections to the settlement process with the defendant. Indeed, they only seemingly arose after the agreement was signed. (ECF No. 30 at 2.) The fact that Nelson unilaterally filed a Termination Agreement with the court is of no consequence. See Remark, LLC v. Adell Broad. Corp., 702 F.3d 280, 283 (6th Cir. 2012) ("[A] prior meeting of the minds is not undone by the decision of one party to back out of the last version, even if it is the most formal version, of a settlement agreement."); Ayers v. Empire Fire and Marine Ins. Co., No. 09-1204 B, 2010 WL 2270425, at *4 (W.D. Tenn. June 4, 2010) (finding that a plaintiff's argument that she "simply changed her mind, hoping to receive more proceeds" was "insufficient to render the [settlement] agreement unenforceable") (citing Girard v. Mich. Dep't of Corr., No. 96-71343, 1997 WL 1068633, at *4 (E.D. Mich. Oct. 9, 1997), aff'd, 172 F.3d 48 (6th Cir. 1998)). Under the governing objective standard, the record shows a meeting of the minds on all material terms of the settlement.

Nelson offers only one counterargument. He claims his agreement was coerced by his counsel, who told him he would need to be deposed if the case was not settled. (ECF No. 30 at 2.) This is not an argument of mutual mistake, nor of fraud by the defendant. Instead, read liberally, this claim amounts to an affirmative defense of duress. "Duress is a condition of the mind produced by improper external pressure or influence that destroys the free will of a person causing him to make a contract not of his volition." Trigg v. Trigg, No. E2014-00860-COA-R3-CV, 2015 WL 66544, at *5 (Tenn. Ct. App. 2015) (quoting Gilley v. Gilley, 778 S.W.2d 862, 864 (Tenn. Ct. App. 1989)). The pressure must "be of such severity, either threatened, impending or actually afflicted, so as to overcome the mind and will of a person of ordinary firmness." McMahan v. McMahan, No. E2004-03032-COA-R3-CV, 2005 WL 3287475, at *8 (Tenn. Ct. App. 2005) (quoting McClellan v. McClellan, 873 S.W.2d 350, 351-52 (Tenn. Ct. App. 1993)). Improper threats include those of crimes or torts, prosecution, bad faith use of civil litigation, or breach of the duty of good faith in contracting. Restatement (Second) of Contracts § 176 (Am. Law Inst. 1981) (updated June 2021). The general rule of Tennessee contract law is that "a party to a contract cannot be relieved on account of the fraud of a third person in procuring the execution of such contract, that person not being an agent of nor acting in collusion with the opposite party." Columbian Mut. Life Ins. Co. v. Martin,

136 S.W. 2d 52, 55 (Tenn. 1940) (citing Cason v. Cason, 93 S.W. 89, 93 (Tenn. 1905)); see also 21 Tenn. Prac. Contract Law and Practice § 6:4. Duress — Means of Perpetration (Aug. 2020) ("the validity of a contract is not affected where the execution was induced through duress perpetrated by a third person, where the duress was not committed with the knowledge or consent of the obligee").

Nelson's affidavit states that he settled his claims only because he was told that he would be deposed if the case continued. (ECF No. 30 at 2.) This is not an "improper external pressure." Trigg, 2015 WL 66544 at *5. First, the statement accurately reflects the lawsuit's procedural posture when Nelson decided to settle. (ECF No. 20) (Notice to Take Deposition of Gerald Nelson). Second, the potential of being deposed is not the type of severe or threatening conduct that would overcome the will of an ordinary individual. Depositions are a routine matter of civil litigation,[2] and more extraordinary threats than depositions have been found to not meet the duress standard in Tennessee. See McClellan, 873 S.W.2d at 351-52 (threat to file for divorce); Golden v. Hood, No. E1999-02443-COA-MR3-CV, 2000 WL 122195, at *2 (Tenn. Ct. App. 2000) (threat to withdraw as counsel if plaintiff did not sign a

---

[2] Nelson claims that he later learned he did not need to be deposed, but this claim is incorrect as a matter of civil procedure. (ECF No. 30 at 2); see Fed. R. Civ. Pro. 30(a)(1) (allowing a deponent's attendance to be compelled).

mediation agreement). There is also no evidence of any collusion between his counsel and the defendant. Such collusion is a necessary element to a duress claim, even in a settlement context, where the allegedly improper pressure comes from a non-contracting party. See Martin, 136 S.W. 2d at 55; Green v. YMCA of Memphis, No. W2014-02190-COA-R3-CV, 2015 WL 6736705, at *5 (Tenn. Ct. App. Nov. 4, 2015) (dismissing duress claim because "the only allegations regarding duress pertain to [plaintiff's attorney] rather than [defendants]") (); Holloway v. Evers, No. M2006-01644-COA-R3-CV, 2007 WL 43225128, at *9 (Tenn. Ct. App. Dec. 6, 2007) (dismissing claim because duress conditions "were not caused by the defendants"). Since the record establishes a meeting of the minds on all material terms, and Nelson's claim of duress fails, the undersigned submits that the parties entered into a valid and enforceable settlement agreement.

### III.   RECOMMENDATION

For the reasons above, it is recommended that the defendant's Motion to Enforce Settlement Agreement be granted, that the defendant be ordered to pay Nelson the agreed-upon settlement amount, and that Nelson's lawsuit be dismissed with prejudice in accordance with the settlement agreement.

IT IS SO ORDERED.

s/ Tu M. Pham

```
                    TU M. PHAM
                    Chief United States Magistrate Judge

                    September 10, 2021
                    Date
```

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**